**William BOLDEN, III, et al.**

v.

**PENNSYLVANIA STATE POLICE et al.**

Civ. A. No. 73–2604.

United States District Court,
E. D. Pennsylvania.

Nov. 29, 1976.

Germaine Ingram, David Kraut, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Norman Watkins, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Presently before the Court are plaintiffs' motions for contempt and/or for supplemental injunctive relief. The motions are based on allegations that defendants have failed to comply with a Consent Decree entered in this action on June 20, 1974. The history of this litigation is necessary to an understanding of the present motions.

In 1973, Trooper Bolden, a minority member of the Pennsylvania State Police, filed this class action suit alleging discrimination in the employment and promotion policies of the State Police. Bolden sought injunctive relief and affirmative relief to remedy the violations of the constitutional rights of minority troopers.[1] As a result of extensive discovery, plaintiffs uncovered a wealth of evidence to support the allegations of discrimination.

1. Minorities are defined in the Consent Decree as non-whites and Spanish-surnamed individuals.

Confronted with this evidence, defendants entered into a detailed stipulation admitting not only that a racial imbalance existed in the State Police as a result of racial discrimination, but also admitting that the "Governor's Affirmative Action Council has not been able, and has, therefore, failed to end the discrimination inflicted by the State Police against blacks and other minorities." [2] Faced with such admissions, defendants requested plaintiffs to enter negotiations for remedial relief to be entered by way of a Consent Decree.

On June 20, 1974, the Court approved the seventeen-page Consent Decree tendered by the parties. The Consent Decree, *inter alia,* required defendants to (1) develop job-related hiring and promotion standards; (2) constitute each future cadet class with at least one-third qualified minorities; (3) maintain a minority promotion ratio of not less than twenty-five percent (25%), provided said promotion goal would be realized by promoting minorities ranked in the top one-third of the eligibility list.

Plaintiffs complain that although more than two years have elapsed since the Decree was entered, defendants have not substantially complied with the terms of the Consent Decree.

At final hearing on said motions, evidence was produced which compels the Court to find that the parties agreed on the hiring and promotion goals of the Consent Decree because of their belief that the authorized strength of the State Police would not be reduced and that the rate of hiring and promotion would be at least equal to the levels experienced in the years preceding the Decree. The evidence also supports our finding that as a result of defendants' administrative actions, the authorized personnel of the State Police has been significantly reduced, and hiring and promotion significantly curtailed and delayed. Thus, the hiring goals, which the parties original-

ly contemplated achieving by 1978, will not be achieved until 1990 at the current rate of hiring. In addition, the achievement of the promotion goals will similarly be significantly delayed.

Defendants do not deny that the reductions in authorized personnel, hirings and promotions were not anticipated at the time of the Decree. As stated in defendants' counsel's legal memorandum at footnote 7, "The defendants do not quarrel with the plaintiffs (sic) assertions that certain 'understandings' surrounded the entry of the Consent Decree. For example, the integration plan was based upon the parties' understanding that hiring would continue at the pre-1974 level—but it was neither guaranteed nor ordered." Additionally, Commissioner Barger testified that the State Police presently needs more troopers and officers; he explained the personnel reductions are caused solely by the financial crisis which arose subsequent to the entry of the Decree. Accordingly, defendants argue that they cannot be held to be in civil contempt for failure to comply with the Decree when compliance is financially impossible.

Also, defendants contend that the Decree cannot legally be modified even though its objectives cannot be realized within the time originally contemplated by the parties. Citing as authority *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), defendants argue:

> Admittedly the original Decree rests on sound footing. There were specific findings of discrimination in hiring and promotions. But the instant request for relief is predicated on no such factual basis. As in *Davis,* there is no evidence of any intention to discriminate with respect to the statewide slowdown in hiring.[3] (emphasis added.)

It is important to point out that plaintiffs do not require a remedy for acts of discrim-

---

**2.** The material quoted herein appears at paragraph 23 of the Stipulation. The entire Stipulation entered of record at the time of trial covers 31 pages plus exhibits, which supplement the Stipulation.

**3.** Page 10 of Defendants' Memorandum in Opposition to Plaintiffs' Additional Motion for Contempt And/Or For Supplemental Injunctive Relief.

ination subsequent to the Decree. Plaintiffs seek only a modification of the Decree in order to effectively remedy pre-decree deprivations of their constitutional rights by admittedly racially discriminatory conduct on the part of the State Police. Certainly, under the facts of this case, *Washington v. Davis* is inapposite.

■ Clearly this Court has the power to modify the Consent Decree. The Supreme Court, in an opinion by Mr. Justice Cardozo has stated:

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent. *United States v. Swift and Co., et al.,* 286 U.S. 106, 52 S.Ct. 460, 462 (1932).

Indeed, a Court, "should modify the decree so as to achieve the required result with all appropriate expedition." *United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 252, 88 S.Ct. 1496, 1501, 20 L.Ed.2d 526 (1968).

In this case, in addition to the inherent power to modify the Decree, express authority to modify is contained within the following provisions of the Decree:

VII. *Modification of Decree*

Any party may apply to the Court at any time for an Order modifying any of the terms of this Decree. Reasonable notice of such application shall be given to counsel for each party.

IX. *Continuing Jurisdiction of the Court*

This Court retains jurisdiction of this action.

Thus, by the terms of the Decree, the jurisdiction of this Court continues as to the subject matter of the Decree, and any terms of the Decree may be modified on application of any party.

■ The undisputed fact is that the objective of the original Consent Decree—to eradicate within a reasonable time the effects of past discrimination by the State Police—has been frustrated by the conduct of the defendants. Accordingly, plaintiffs are entitled to relief.

The relief requested by plaintiffs is stated in the alternative in their motion entitled, "Plaintiffs' Additional Motion for Contempt And/Or For Supplemental Injunctive Relief." Primarily, plaintiffs request an order adjudging defendants in contempt of the June 20, 1974 Consent Decree, and an order requiring defendants to promote forthwith all eligible non-whites. Also, plaintiffs request that defendants be ordered to hire and promote in accordance with the standards of the years prior to the Consent Decree.

We grant, however, as appropriate to achieve the objectives of the Consent Decree, a part of the alternative relief requested. Accordingly, the Order we entered increases the proportion of qualified persons to be hired from not less than one minority for every two non-minorities to not less than one minority for every one non-minority. In regard to promotions, the eligibility criteria is modified to include all minorities who rank in the top half (½) of each promotion eligibility list. The proportion of minorities to non-minorities who are to be promoted is increased from not less than one minority for every three non-minorities to not less than one minority for every two non-minorities promoted, provided a sufficient number of minorities are in the eligibility pool.

The modifications of the Consent Decree are narrowly restricted and are intended to "achieve the required result with all appropriate expedition." *United States v. United Shoe Machinery Corp., supra.*

The testimony of Commissioner Barger of the State Police makes clear and the Court finds that the ordered modification of the Consent Decree will not adversely affect the performance of the State Police. While Commissioner Barger did testify that he was opposed to the modification of the Decree, his only concern was that some non-minority members of the force would resent the modifications. He testified further that his opposition is not based on any belief that the minority persons hired or promoted would not perform in the best tradition of the State Police.

This Court cannot deny to plaintiffs an effective remedy for admitted deprivations of the plaintiffs' constitutional rights by the State, merely because of the fear of a hostile reaction by some members of the majority. Certainly the Commissioner, in the exercise of his broad powers, has the necessary authority to deal effectively with any problems arising out of such hostility.

Having ordered the modification of the Consent Decree in order to better achieve its purposes in accordance with the express authority provided in the Consent Decree, and in accordance with the Court's inherent power to modify the Decree under the circumstances existing in this case, we need not decide and do not decide whether the conduct of the defendants is in contempt of the Consent Decree.[4]

The following order is entered.

## ORDER

And now, this 29th day of November, 1976, upon consideration of the pending motions filed by plaintiffs to adjudge defendants in contempt and/or to modify the Consent Decree dated June 20, 1974, the responses thereto, the evidence admitted at final hearing, the legal memoranda filed by the parties and oral argument of counsel, IT IS ORDERED:

I. The Consent Decree dated June 20, 1974 is modified as follows:

### Part I—HIRING PROCEDURES

*Paragraph 1.*

The defendant Pennsylvania State Police shall establish an eligibility list of qualified applicants for hiring for each State Police Academy class and shall rank such applicants in the manner specified in paragraph I.2 and I.3(a) to (e). At least one half (50 percent) of all candidates selected for each Academy class from such list shall be minorities, provided that there is a sufficient number of qualified minority applicants. This one-half ratio shall continue until such time as nine point two percent (9.2%) of the enlisted complement of the Pennsylvania State Police consists of minorities.

*Paragraph 3(e)—Selection of Cadet Class*

Pending validation of the employment criteria of the Pennsylvania State Police, cadet classes shall be selected on the basis of the interim criteria described above. Classes shall be selected from a list comprised of qualified candidates who have passed all of the examinations, interviews, and other requirements described above. Such applicants shall be listed in the order of their combined scores on the written examination and oral interview. The written examination shall count as seventy (70) percent of the final score and the oral interview shall count as thirty (30) percent of the final score. Selections shall be made from said list in the order in which the applicants appear on said list, provided selection in this manner results in a class which shall be comprised of at least one-half (½) minority members until the above described nine point two percent (9.2%) quota is reached. If selection of a class in this manner does not produce the aforesaid result and if there are additional minorities in the pool of qualified applicants, said qualified minorities shall be selected for the class until either the aforesaid ratio is reached for the class or the pool of qualified minorities is exhausted. This selection procedure is hereby declared by the Court to be required as a matter of Federal Law notwithstanding any provisions of State law to the contrary.

### Part B.—Promotion Procedure

*Paragraph (2)—Promotion Ratio*

Minorities shall comprise thirty-three and one-third percent (33⅓%) of all those pro-

---

4. Plaintiffs also complain that the defendants have not moved quickly enough to validate selection and promotion criteria. However, the alternative relief requested contained no specific request for relief in this regard, nor has the court modified the original Consent Decree in this regard. We note there is presently some movement by defendants to validate. We are certain that defendants realize that all members of the State Police presently hold office without the benefit of having established entitlement by way of validated criteria.

moted to the ranks of corporal, sergeant and lieutenant within the State Police until such time as nine point two percent (9.2%) of those ranks are comprised of minority members or until further order of this Court, provided that there is a sufficient pool of qualified minority applicants to meet this ratio at any given promotion period. The promotion ratio described above shall not be cumulative from one promotion list to the next.

*Paragraph 4(b)*—For each eligibility list for promotion to corporal, sergeant or lieutenant, the State Police shall rank all applicants in order of the numerical score assigned according to sub-paragraph (a) *supra*. Each person who places in the top one-half (i. e., 50 percent) of each eligibility list shall be qualified for promotion to the rank for which that list is compiled.

*Paragraph 4(c)*—Promotions from the aforesaid list shall be made by first determining the number of vacancies in a given rank to be filled from that promotion list; then examining the list from the highest score on down to determine whether that number of vacancies can be filled and the aforesaid thirty-three and one-third percent (33⅓%) promotion ratio reached without deviating from the applicants' standing on the list. If both these results can be achieved in this manner, promotions will be determined solely by an applicant's standing on the promotion list. However, if the promotion ratio cannot be reached in this manner and if there are additional minority members on the promotion list who are eligible for promotion by virtue of their having placed in the top one-half (½) of the total number of applicants for promotion, such minority applicants will be selected for promotion in the order of their standing on the list until such time as the minorities make up thirty-three and one-third percent (33⅓%) of those to be promoted from said list or until the number of minorities eligible for promotion from that list has been exhausted. No one who does not place in the top one-half (½) of the entire group of applicants for promotion will be eligible for promotion from that list. This promotion procedure is hereby declared by the Court to be required by Federal Law notwithstanding any provisions of State law to the contrary.

IT IS FURTHER ORDERED that all other provisions of the Consent Decree dated June 20, 1974 not herein modified shall remain in full force and effect.

IT IS FURTHER ORDERED that all other relief requested by Plaintiffs is DENIED.